# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# EL PASO DIVISION

| | | |
|---|---|---|
| MARIA CARLOS,<br>    Plaintiff, | )<br>)<br>) | |
| v. | )<br>) | NO. EP-10-CV-00171-RFC<br>(by consent) |
| MICHAEL J. ASTRUE,<br>Commissioner of the Social<br>Security Administration,<br>    Defendant. | )<br>)<br>)<br>) | |

## MEMORANDUM OPINION AND ORDER

This is a civil action seeking judicial review of an administrative decision. Jurisdiction is predicated upon 42 U.S.C. § 405(g). Both parties having consented to trial on the merits before a United States Magistrate Judge; the case was transferred to this Court for trial and entry of judgment pursuant to 28 U.S.C. § 636(c) and Appendix C to the Local Court Rules of the Western District of Texas.

Plaintiff appeals from the decision of the Commissioner of the Social Security Administration (Commissioner), denying her claims for disability insurance benefits under Title II of the Social Security Act. For the reasons set forth below, this Court orders that the Commissioner's decision be affirmed.

## BACKGROUND

Plaintiff was born on March 3, 1953, and was age fifty-five at the time of the administrative decision in this case. (R:20, 76)[1] She has past relevant work experience as a sewing machine

---

[1] Reference to documents filed in this case is designated by "(Doc. [docket entry number(s)]:[page number(s)])". Reference to the transcript of the record of administrative proceedings filed in this case, (Doc. 18), is designated by "(R:[page number(s)])".

operator and a fast food worker. (R:20, 26, 88-90, 114) She has only a sixth grade education, which she received in Mexico, and she cannot read, write, understand, or speak English. (R:25)

## PROCEDURAL HISTORY

On September 19, 2006, Plaintiff filed an application for disability insurance benefits, alleging impairments that became disabling on April 4, 2006. (R:76) The application was denied initially and on reconsideration. (R:36-46) Plaintiff filed a request for a hearing, which was conducted on July 24, 2008. (R:21-30) Plaintiff testified with the aid of an interpreter. (R:21, 23) A vocational expert was present, but did not testify. (R: 21-30) The Administrative Law Judge ("ALJ") issued his decision on November 28, 2008, denying benefits. (R:15-20) Plaintiff's request for review was denied by the Appeals Council on March 6, 2010. (R:1-6)

On May 10, 2010, Plaintiff initiated this action for judicial review by filing her complaint. (Docs. 1-4) Plaintiff's motion to proceed *in forma pauperis* was granted and the complaint filed. (Docs. 5-6) The Commissioner filed an answer on July 22, 2010, and a certified copy of the transcript of the administrative proceedings was received on July 23, 2010. (Docs. 14, 18) On October 23, 2010, Plaintiff filed her brief in support of her complaint. (Doc. 23) On November 19, 2010, the Commissioner filed his brief in support of the decision to deny benefits. (Doc. 28)[2]

---

[2] This cause was initially referred to the Honorable Michael S. McDonald on May 10, 2010, and was referred and then reassigned to the Honorable Margaret F. Leachman, transferred to the Honorable Richard P. Mesa, and finally transferred to this Court on April 5, 2011. (Docs. 1, 13, 16, 24, 29) The parties were ordered to file a new notice of consent or non-consent to Magistrate Judge jurisdiction on April 7, 2011, and both parties entered notices consenting to this Court deciding the appeal. (Docs. 30-32)

# ISSUES

Plaintiff claims that the record does not contain substantial evidence to support the ALJ's finding that Plaintiff is not disabled and that the ALJ's decision is the result of legal error. (Doc. 23:5) Plaintiff argues that the ALJ failed to properly evaluate Plaintiff's hand impairment and the limitations resulting from that impairment in determining Plaintiff's RFC. (*Id*. at 2)

Plaintiff requests that the ALJ's decision be reversed and the cause remanded for an award of benefits or, in the alternative, additional administrative proceedings. (*Id*. at 5)

# DISCUSSION

## A. *Standard of Review*

This Court's review is limited to a determination of whether the Commissioner's final decision is supported by substantial evidence on the record as a whole and whether the Commissioner applied the proper legal standards in evaluating the evidence. *See Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), *cert. denied*, 514 U.S. 1120, 115 S.Ct. 1984 (1995). Substantial evidence is more than a scintilla, but can be less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). A finding of no substantial evidence will be made only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (citing *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). In reviewing the substantiality of the evidence, the Court must consider the record as a whole and "must take into account whatever in the record fairly detracts from its weight." *Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986).

If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. *Martinez*, 64 F.3d at 173. In applying the substantial-evidence standard, the court must carefully examine the entire record, but may not re-weigh the evidence or try the issues *de novo*. *Haywood v. Sullivan*, 888 F.2d 1463, 1466 (5th Cir. 1989). It may not substitute its own judgment "even if the evidence preponderates against the [Commissioner's] decision," because substantial evidence is less than a preponderance. *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988). Conflicts in the evidence are for the Commissioner, and not the courts, to resolve. *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993).

**B.     *Evaluation Process***

Disability is defined as the "inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which. . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ evaluates disability claims according to a sequential five-step process: 1) whether the claimant is currently engaged in substantial gainful activity; 2) whether the claimant has a severe impairment; 3) whether the claimant's impairment(s) meet or equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart B, Appendix 1; 4) whether the impairment prevents the claimant from performing past relevant work; and 5) whether the impairment prevents the claimant from doing any other work. 20 C.F.R. § 404.1520. A person's residual functional capacity ("RFC") is what she can still do despite her limitations or impairments. 20 C.F.R. § 404.1545(a); SSR 96-8p.

An individual applying for benefits bears the initial burden of proving that she is disabled for purposes of the Act. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). The claimant bears the burden of proof on the first four steps, and once met, the burden shifts to the Commissioner to show

that there is other substantial gainful employment available that the claimant is capable of performing. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5, 107 S.Ct. 2287, 2294 n. 5 (1987); *Anderson v. Sullivan*, 887 F.2d 630, 632 (5th Cir. 1989).

## C. *The ALJ's Decision*

First, the ALJ found that although Plaintiff had worked, she had not engaged in substantial gainful activity since the alleged onset date of April 4, 2006. (R:17) Plaintiff met the insured status requirements of the Act through December 31, 2010. *Id*.

In the second step, the ALJ found that Plaintiff had the following severe impairments: lumbar and cervical strain, sprain and hand and leg pains – restless leg syndrome. (R:17) The ALJ found that Plaintiff had non-medically determinable impairments of: wrist impairment and depressive disorder. *Id*.

At the third step, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 []." (R:18)

Next, the ALJ determined that Plaintiff retained the RFC to perform the full range of light work as defined in 20 CFR § 404.1567(b).[3] (R:18) At step four, the ALJ found that Plaintiff was

---

[3] According to the regulations:
 [l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.
20 C.F.R. § 404.1567(b).

5

able to perform her past relevant work as a sewing machine operator and fast food worker, finding that such work does not require the performance of work-related activities precluded by the claimant's RFC. (R:20)

Consequently, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act, and was not entitled to disability insurance benefits. (R:20)

Finally, the ALJ stated in his decision that he carefully considered the entire record and all of the evidence. (R:17-20) Throughout his decision, the ALJ cited to the pertinent administrative regulations and policy statements. *Id*.

### D. *Substantial Evidence Supports the ALJ's Findings*

Plaintiff claims that the ALJ's RFC assessment failed to account for all of the limitations resulting from Plaintiff's impairments, specifically limitations caused by her severe hand pains. (Doc. 23:3-5; R:18-19) Plaintiff contends that medical evidence in the record supports a conclusion that Plaintiff's hand impairment limited her ability to bend her right elbow and perform gripping and fine manipulation tasks with her hands. (Doc. 23:4) Such limited ability, she asserts, would preclude her from performing her past relevant work as either a sewing machine operator, which requires constant handling and fingering, or a fast food service worker, which requires constant handling and frequent fingering. (Doc. 23:4-5 (citing The Dictionary of Occupational Titles, Listings 311.472-010 (fast food worker), and 786.682-194 (overlock sewing machine operator)). Plaintiff concludes that she was prejudiced by the ALJ's error of failing to consider and include the specified resulting limitations because the ALJ did not proceed to the fifth step of the evaluation, shifting the burden to the Commissioner to prove that Plaintiff could perform other work existing

6

in significant numbers in the national economy. (Doc. 23: 5 (citing *Masterson v. Barnhart*, 309 F.3d 267, 271-72 (5th Cir. 2002))).

The Commissioner contends the ALJ's decision is not the result of legal error and is substantially supported by the evidence as follows. (Doc. 28:5-7) The record reflects Plaintiff continued to work after having been conservatively treated for initial complaints of pain in her upper extremities prior to 2000. (Doc. 28:5; R: 170, 177, 179) Plaintiff did not seek additional treatment for such pain between January 2000 and May 2007. (Doc. 28:6; R: 187, 236) Medical records since Plaintiff's alleged onset date lack clinical findings supporting the limiting effects Plaintiff alleges. (Doc. 28:5-7) Plaintiff reported relief with over-the-counter medication in 2007. (Doc. 28:6)

The RFC is the "most [Plaintiff] can do despite [her] limitations." 20 C.F.R. § 404.1545(a). The RFC is a function-by-function assessment, with both exertional and nonexertional factors to be considered. SSR 96-8p *2. The regulations require the ALJ to consider all of Plaintiff's impairments in determining RFC, even those that are not severe. 20 C.F.R. § 404.1545(e). The ALJ has the responsibility for determining a claimant's RFC. 20 C.F.R. § 404.1527(e)(2). That decision, however, must be supported by substantial evidence. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

As noted above, the ALJ found that claimant's severe impairments included hand pain and that her alleged wrist impairment was not medically-determinable. (R:17) Plaintiff's suggestion that the ALJ's decision is the result of legal error, that the ALJ failed to properly consider the limiting effects of Plaintiff's hand impairments in determining her RFC because he did not include any manipulative limitations in her RFC, is refuted by the ALJ's written decision. The ALJ explicitly stated that in determining Plaintiff's RFC, he considered all of Plaintiff's alleged symptoms, both

to determine whether such symptoms could reasonably be expected to result from an underlying medically determinable impairment and to evaluate the intensity, persistence, and limiting effects of such symptoms to determine the extent to which they limit Plaintiff's ability to do basic work activities. (R:18) The ALJ then meticulously addressed Plaintiff's allegations regarding her hand impairment. (R:19) While the ALJ found that Plaintiff's medically-determinable impairments could reasonably be expected to cause the alleged symptoms, he found that her statements concerning the intensity, persistence, and limiting effects of her symptoms were not credible to the extent they were inconsistent with the RFC the ALJ assessed. (R:19) The ALJ determined that the non-examining agency physician's RFC assessment, prepared on November 13, 2006, was consistent with the record as a whole. (R:19, 221-28) The doctor found Plaintiff could occasionally lift 20 pounds, could frequently lift ten pounds, had unlimited pushing and pulling with her extremities, and no manipulative limitations. (R:19, 222, 224) Thus, the ALJ properly evaluated Plaintiff's hand impairment and resulting limitations in assessing Plaintiff's RFC. Plaintiff's allegation to the contrary, claiming legal error, is without merit.

Plaintiff also argues that the ALJ's RFC determination, and thus the ultimate determination at step four that Plaintiff was not disabled, is not supported by substantial evidence. (Doc. 23:3-5) The record reflects the following:

Plaintiff alleged hand and finger numbness and pain both in her written application for benefits and in her hearing testimony. (Doc. 23:3; R:27, 28, 122, 137) In an initial face-to-face interview regarding her Field Office Disability Report, dated September 19, 2006, the interviewer noted that no difficulty had been observed regarding Plaintiff's use of her hands or in writing and that Plaintiff's grooming was okay. (R:100-102) In an undated Disability Report, Plaintiff described

8

her limiting conditions as her nervous system from her neck to her feet, describing her resulting limitations as "performance is slowing down, fatigue, tired, sleep, and constant pain, hands get numb, poor circulation, itchy in feet, swelling." (R:122) She alleged that her conditions first bothered her on April 1, 2006, and that she became unable to work due to such conditions on April 4, 2006. (R:122) She acknowledged that she had continued to work after the date her conditions first bothered her, and was currently working, but working fewer hours. (R:122) Plaintiff listed three medical providers she had seen: Manuel Moreno, a chiropractor from whom she received therapy between 1999 and 2000; Dr. Carlos Neve de los Monteros, a primary doctor in Mexico from whom she received tests and medication between 1998 and 2006, and Dr. Jorge Rojero, a primary doctor she had seen in El Paso, Texas, between 1994 and 1995, from whom she received tests and medications. (R:125) As her current medications, Plaintiff listed only parasetamol, also known as acetaminophen, prescribed for pain by her doctor in Mexico. (R:126)

In her activities of daily living form dated November 1, 2006, Plaintiff reported that she could not lift or carry because she had no strength; she could not use her hands because her hands get numb; she could not reach because her arms hurt when extended; she could not drive because the pressure required hurt her hands and fingers; she could not read a newspaper because her arms would go numb; she could not use the phone because she had no strength to hold it; nor could she do housework, yard work, participate in leisure activities, or do her personal grooming. (R:136-37) She also stated that her hands swell. (R:137) She stated that she had these problems daily, they were made worse when she moved, did housework, and lifted things, and were made a little, though "not much" better by not moving and taking painkillers. (R:136) She said she could not exercise because the pain is more intense. *Id*.

9

At the hearing, held on July 24, 2008, Plaintiff was told that she could raise her left hand to be sworn in if she could not raise her right hand. (R:25) She testified as follows: She is right handed and that she had been unable to move or use her right hand at all for close to two years. (R:27) She wore a brace on her right hand at all times that was prescribed by Dr. Moreno. (R:27) Her hands are numb and she has constant radiating pain. (R:28) She had carpal tunnel syndrome since 1997 and arthritis in her fingers in both hands. (R:28-29) She could lift nothing with her right hand and only five pounds with her left hand. (R:29)

Plaintiff points to the following evidence as undermining the ALJ's RFC determination. (Doc. 23:3-5) Plaintiff complained of hand impairments for many years; in March 1998 she complained of pain in both hands that caused her to drop objects. (R:170) Examination revealed that Plaintiff had mild giveaway weakness of her right hand grip secondary to pain and discomfort. (R:170) Plaintiff had bilateral Phalen's and Tinel's signs at the wrist and pinprick was reduced over the bilateral second digits. (R:170) In November 1998,[4] Plaintiff was advised by doctors not to perform fine manipulations or repetitive gripping or pinching. (R: 179) In January 1999, Plaintiff was advised to avoid applying pressure with her thumb over the index finger of her right hand. (R: 193) In February and May 1999, Plaintiff's diagnosis included carpal tunnel syndrome and an ulnar impingement. (R:188) In March 1999, Plaintiff was again advised to avoid repetitive pressure of her thumb against her index finger, and to avoid repetitive pronation of her right elbow until further notice. (R:195) In May 1999, Plaintiff was again advised to not grip or pinch or pronate her right elbow for two months. (R:197)

---

[4] Plaintiff attributes the date November 1998 to this medical record, while the Court understands the document to be dated April 1999. (Doc. 23:4; R:179) This discrepancy is not material and so the Court defers to Plaintiff's date.

The ALJ noted that Plaintiff was treated briefly by a chiropractor, Manuel Moreno, with respect to her reported inability to use her right hand, but that there were no treatment notes from the chiropractor after 1999. (R:19, 170-206) Further, the ALJ noted that Plaintiff was able to perform her regular duties at the factory in 1999. (R:19, 178, 180, 186, 187)

The Commissioner argues that, although Plaintiff complains of persistent pain, she did not seek treatment for more than seven years, between January 2000 and May 2007. (Doc. 28:6; R:187, 236) Medical records subsequent to Plaintiff's alleged onset date of April 4, 2006, include Plaintiff's consultative examination with Dr. Mauricio E. Jimenez. Plaintiff highlights parts of the examination report as evidence detracting from the substantiality of the evidence supporting the ALJ's determination. Plaintiff's complaints for which she was examined did include hand "problems." (R: 217) Plaintiff did report having pain in her neck that radiated to both her shoulders and upper extremities including both hands, which had been going on since 1998. (R:217) Dr. Jimenez did find Plaintiff had a symmetrically decreased hand grip and included in his list of impressions "bilateral hand pain." (R:218-219) However, in the same report, Dr. Jimenez noted that Plaintiff's medical history was negative for arthritis. (R:217) He noted that Plaintiff showed 2+ deep tendon reflexes in all her extremities, a normal gait, and no motor or sensory deficits. (R:217-18) Although Dr. Jimenez observed that Plaintiff showed reduced grip strength in both hands, he reported that Plaintiff was still able to reach and pick up objects, exhibited a normal range of motion in her wrists and elbows, and showed no evidence of atrophy from a lack of use of her hands. (R: 218)

Plaintiff argues that in August 2007, she sought medical help due to complaints including arm pain. (Doc. 23:4; R:240) This was one of several complaints listed as reasons for the doctor visit, the doctor noted Plaintiff complained of multiple joint pains relieved with ibuprofen, assessed

11

pain in joints at multiple sites, and prescribed only weight reduction, Motrin, and acetaminophen. (R:240) In May 2007, Plaintiff had not listed any problems with her upper extremities as a reason for her doctor visit; Plaintiff's history included that Plaintiff was a member of a health club and exercised three to four times a week. (R:236) In June 2007, Plaintiff had complained of right shoulder pain, but the notes of the visit focused on her swollen eye condition. (R:238) Plaintiff argues that in September 2007, Plaintiff complained of hand numbness; the doctor's notes, however, did not address that complaint, but focused on Plaintiff's complaint of cold symptoms, assessing bronchitis. (Doc. 23:4; R:242) In November 2007, Plaintiff did not list pain in her upper extremities as a reason for her visit. (R:244) Plaintiff's treating physician, Dr. Jose R. Espinosa, who examined Plaintiff in May, June, August, September, and November 2007, also stated that Plaintiff exhibited no edema or cyanosis and that Plaintiff's extremities appeared normal. (R:236-38, 240, 242-46).

In January 2008, Plaintiff was seen in part to follow up on her complaint of a persistent pain in her right hand, middle finger, with tingling in the arms, numbness, swelling, and spasms; but no functional limitations were noted upon examination and no assessment regarding Plaintiff's arm or hand pain was made. (R:253) In April 2008, Plaintiff complained of arthritis causing pain aggravated by movement and was examined; the doctor assessed restless leg syndrome, prescribed Vicodin and Zoloft, and ordered some labs. (R: 251, 252) Dr. Renee Martinez noted upon examination of Plaintiff in January and April 2008 that Plaintiff was in no apparent distress, showed no joint pain, swelling, or weakness, and demonstrated a normal gait. (R: 251-53)

The Commissioner argues that the lack of clinical findings showing neurological deficits and muscle atrophy is significant because the Fifth Circuit has held that a lack of these symptoms supports an ALJ's denial of benefits. (Doc. 28:6 (*citing Hollis v. Bowen*, 837 F.2d 1378, 1384 (5th

Cir. 1988), and *Adams v. Bowen*, 833 F.2d 509, 512 (5th Cir. 1987)). In *Hollis*, the Fifth Circuit upheld the District Court's affirmation of the ALJ's determination denying benefits where the plaintiff's records reflected that despite her arthritis, she had a full range of movement in her extremities, her neurological reflexes remained intact, no swelling of the joints was detectable, no evidence of muscle spasm was observed, and plaintiff had not complained to her various doctors that the prescribed medications were ineffective. *Hollis*, 837 F.2d at 1384.

Plaintiff reported to Dr. Espinosa that her joint pains were relieved with over-the-counter medication, such as Ibuprofen, and neither Dr. Espinosa nor Dr. Martinez opted to treat Plaintiff's complaints any more aggressively. (Doc. 28: 6-7) The Commissioner argues that this course of treatment supports the ALJ's finding that Plaintiff could perform a full range of light work. *Id.,* (citing *Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995)). Impairments that can reasonably be remedied or controlled by medication or treatment are not disabling. *Johnson v. Bowen*, 864 F.2d 340, 347 (5th Cir. 1988).

Additionally, the Commissioner points out that Plaintiff continued to work as a sewing machine operator and fast food worker until 2006, well after she was advised in 1999 to avoid overhead reaching, forward reaching or fine manipulation. (Doc. 28:5; R: 170, 177, 179) The Commissioner argues that Plaintiff's ability to work for a number of years with the same condition she alleges to be disabling, without evidence of deterioration in her condition, undermines her credibility and supports the ALJ's finding of not disabled. (Doc. 28:5 (citing *Vaughn*, 58 F.3d at 130 (working for several years despite impairments claimed to be disabling supports finding of not disabled))).

The ALJ also noted that Plaintiff worked part time as a department store salesclerk after her alleged onset date. (R:17, 19) At the hearing in 2008, Plaintiff testified that she had not worked since April 1, 2006. (R:27) Plaintiff had previously answered in her disability report that she was still working, but working fewer hours. (R:122) Later in the hearing, Plaintiff stated that her last job was at a fast food establishment, where she worked for about two months. (R:26) Prior to that, Plaintiff had worked in a department store for approximately one month. (R:26) In a work activity report dated September 2006, it was reported that Plaintiff started working at a department store part time on July 25, 2006, with income reported from July, August, and September 2006. (R:104-111)

The question on review is not whether there is some or even substantial evidence supporting Plaintiff's disability claim, but whether there is substantial evidence, which may be less than a preponderance of the evidence, to support the Commissioner's determination. *Newton v. Apfel*, 209 F.3d at 452. In reviewing Plaintiff's no-substantial-evidence claim, the Court has considered the record as a whole and has taken "into account whatever in the record fairly detracts from its weight." *See Singletary v. Bowen*, 798 F.2d at 823. To whatever degree the isolated evidence highlighted by Plaintiff might detract from the weight of the rest of the evidence in the record, it falls far short of that required to establish a no-substantial-evidence claim. Plaintiff's evidence fails to preponderate against the ALJ's determination, much less establish a "conspicuous absence of credible choices" or "contrary medical evidence." *See Abshire v. Bowen*, 848 F.2d at 640.

The ALJ's RFC determination finds substantial support in the evidence and is not the result of legal error. The ALJ's determination that Plaintiff could perform her past relevant work and that she is not disabled under the Act is consistent with that RFC determination. Thus, Plaintiff's claims for relief from such determination are without merit.

# CONCLUSION

The Court concludes that the ALJ's decision is supported by substantial evidence, and comports with relevant legal standards. Based on the foregoing, it is hereby **ORDERED** that the decision of the Commissioner's determination be **AFFIRMED**.

**SIGNED** and **ENTERED** on June 27, 2011.

_____
ROBERT F. CASTANEDA
UNITED STATES MAGISTRATE JUDGE